# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELIZABETH ANN ROBLES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-378-CG |

## **OPINION AND ORDER**

Plaintiff Elizabeth Ann Robles appeals the denial of her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. The parties have consented to the jurisdiction of a United States Magistrate Judge. Consent, Doc. No. 18; *see also* Order Reassigning Case, Doc. No. 19. Having reviewed the record,[1] including the transcript of the administrative hearing and the decision of the administrative law judge ("ALJ"), as well as the pleadings and briefs of the parties, the Court REVERSES the Commissioner's decision and REMANDS the matter for further proceedings.

PROCEDURAL HISTORY

On April 12, 2010, Plaintiff filed her application for DIB with the Social Security Administration ("SSA"), alleging a disability onset date of June 15, 2003. R. 120, 144

---

[1] Citations to the administrative record, Doc. No. 13, are as "R. ___," using the pagination assigned by the Social Security Administration in the certified copy of the transcript of the administrative record. Citations to other documents filed in this Court adhere to the pagination assigned by the Court's electronic filing system.

(stating protective filing date of April 2, 2010). Following preliminary administrative denials of her application, Plaintiff at her request appeared with a non-attorney representative for a hearing before an ALJ on December 7, 2011, in Oklahoma City, Oklahoma. R. 24-31, 44-46. The ALJ issued an unfavorable decision on May 11, 2012. R. 11-19. The SSA Appeals Council denied Plaintiff's request for review. R. 1-5. Thus, the decision of the ALJ is the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Thereafter, Plaintiff commenced this appeal.

## THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process to determine whether Plaintiff was disabled and therefore entitled to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from June 15, 2003, the alleged disability onset date, through December 31, 2003, the date on which Plaintiff was last insured. R. 13. At step two, the ALJ determined that Plaintiff has the following severe physical impairments: hypertension and diabetes mellitus. R. 13. The ALJ also noted that Plaintiff had alleged a mental impairment but found the impairment to be non-severe based on a lack of evidence of mental health treatment in the record. R. 15.

At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 15. The ALJ specifically noted that Plaintiff's condition

did not meet or equal Listings 4.00 et seq. (cardiovascular system impairments) or 10.00 et seq. (impairments that affect multiple body systems). R. 15.

At step four, the ALJ considered Plaintiff's residual functional capacity ("RFC"), finding that through Plaintiff's date last insured she could "perform the full range of sedentary work as defined in 20 CFR 404.1567(a)." R. 15. The ALJ determined, however, that Plaintiff's RFC would have prevented Plaintiff from returning to her past relevant work. R. 18. At step five, the ALJ found that Plaintiff could perform, through the date she last was insured, occupations offering significant numbers of jobs in the national economy. R. 19. Accordingly, the ALJ determined that Plaintiff was "not disabled" within the meaning of the Social Security Act. R. 19; *see also* 20 C.F.R. pt. 404, subpt. P, App. 2, Table No. 1, Rule 201.19.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES PRESENTED ON APPEAL

Plaintiff raises three claims of error on appeal. First, Plaintiff contends that the ALJ improperly failed to consider whether Plaintiff met the requirements for Listing

3

12.05(C) (intellectual disability/mental retardation),[2] asserting, in part, that the ALJ neglected to note or discuss Plaintiff's IQ scores. Pl.'s Br., Doc. No. 15, at 9-13; *see also* Pl.'s Reply Br., Doc. No. 17, at 1, 2-4 (asserting severity of Plaintiff's cognitive impairment). Plaintiff next contends that the ALJ erred in the RFC determination by not including all of Plaintiff's impairments. Pl.'s Br. at 14-15. Finally, Plaintiff contends that the ALJ improperly relied on Medical-Vocational Rule 201.19 in finding Plaintiff not disabled. Pl.'s Br. at 15-17.

ANALYSIS

Differing in structure from other mental disorder listings, "Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(A) (2013). If the claimant's impairment satisfies the diagnostic description and any one of the four sets of criteria, the claimant is presumptively disabled.[3] *See id.*

---

[2] On August 1, 2013, after the ALJ's decision in this matter, the SSA announced a final rule to replace the term "mental retardation" with "intellectual disability" in the Listings, noting that "the term 'mental retardation' has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it." *See* Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499, 46,499 (Aug. 1, 2013). The change in terminology did not substantively alter the Listings. *See id.* at 46,501. In this Opinion and Order, the Court uses the terms "mental retardation" and "intellectual disability" interchangeably due to frequent reference to the former in case law discussing Listing 12.05(C).

[3] Listing 12.05 was developed from a collection of medical definitions for mental retardation and does not adhere to a particular definition. *See* Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20,018, 20,022 (Apr. 24,

The diagnostic description for Listing 12.05 states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Id.* § 12.05. Of the four sets of criteria in the Listing, the one asserted by Plaintiff is 12.05(C), which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05(C). The second element of the 12.05(C) criteria—an additional and significant work-related limitation of function—may be established by showing a severe impairment other than the low IQ score. *See id.* § 12.00(A).

Plaintiff initially did not list any mental conditions in her claim for DIB. *See* R. 148. At the hearing before the ALJ, however, Plaintiff testified that she did not attend school beyond ninth grade, twice failed to pass the General Educational Development Tests, and experienced difficulty understanding certain required SSA forms. *See* R. 28-29; *see also* R. 149 (selecting ninth grade as highest grade completed and stating "no" as

---

2002) (declining to adopt one specific medical definition). In part because discrepancies exist among the medical definitions, a specific diagnosis of a cognitive impairment other than "mental retardation" does not necessarily preclude a finding of disability under Listing 12.05. *See id.*; *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (holding formal diagnosis of mental retardation not required for Listing 12.05); *Turnage v. Astrue*, No. 11-4071-JAR, 2012 WL 405590, at *6-7 (D. Kan. Feb. 8, 2012) (collecting cases in which other diagnoses did not preclude consideration of Listing 12.05 and finding error if ALJ failed to consider Listing 12.05 after accepting other diagnosis without question or analysis).

5

to attendance in special education classes); R. 28 (testifying that not all eighth or ninth grade classes were passed, but all seventh grade classes were passed).

The ALJ instructed Plaintiff's representative to file a post-hearing brief outlining Plaintiff's claims. R. 30. In this brief, citing Plaintiff's testimony, the representative expressed concern that Plaintiff was cognitively impaired and requested that the ALJ order a consultative examination to assess the level of such impairment. R. 197. The representative specifically requested that an IQ test be administered and that the ALJ use the results of such testing to assess whether Plaintiff was presumptively disabled under Listing 12.05. R. 197.

The ALJ ordered the requested examination, which was performed by Dr. Robert Danaher, a clinical psychologist, on March 13, 2012. R. 199, 391-400. Among other tests, Dr. Danaher administered the Wechsler Adult Intelligence Scale III ("WAIS-III"), a standardized intelligence test. R. 391, 396-97; *see also* 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(D)(6)(b), (c) (denoting standardized intelligence test scores from Wechsler series as acceptable for Listing 12.05 purposes). Dr. Danaher stated that Plaintiff's "performance on the WAIS-III yielded a Verbal Scale IQ of 70, a Performance Scale IQ of 75, and a Full Scale IQ of 70." R. 396. Based on Plaintiff's IQ scores, her history, and her clinical presentation, Dr. Danaher diagnosed Plaintiff with a borderline level of intellectual functioning. R. 396, 397. Further, based on Plaintiff's spontaneity in interactions with Dr. Danaher and the consistency of Plaintiff's reported history and symptoms, Dr. Danaher stated his opinion that Plaintiff "ha[d] been open and honest in providing the information for [that day's examinations]" and found "[n]o evidence of

exaggeration or malingering." R. 397; *see also* 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(D)(6)(a) (requiring commentary as to validity of intelligence test results).

The ALJ entered into the record Dr. Danaher's consultative examination report, which included Plaintiff's IQ scores. R. 23, 201-02. At step two of his decision, the ALJ discussed Dr. Danaher's report, including the diagnosis of borderline intellectual functioning, but the ALJ did not note or discuss Plaintiff's IQ scores. *See* R. 14. Citing Plaintiff's post-hearing brief, the ALJ acknowledged allegations that Plaintiff had "a mental impairment and did not understand the [SSA's] notices." R. 15; *see also* R. 17. However, because "the medical evidence of record d[id] not reflect any treatment for mental health issues," the ALJ found the alleged mental impairment to be non-severe. R. 15.

At step three, the ALJ did not discuss Listing 12.05(C). R. 15. The ALJ does not explain the apparent decision not to consider that Listing; however, the Commissioner argues that because the ALJ did not find a severe mental impairment at step two, he was excused at step three from considering any mental disorder listings, including Listing 12.05(C). *See* Def.'s Br., Doc. No. 16, at 3-7.

The failure to consider Listing 12.05(C) despite evidence that facially supports the elements of the Listing—namely a qualifying IQ score and a secondary severe impairment—was error. Although the case law indicates some uncertainty as to whether this was a step-two or a step-three error, the Court holds that the error properly is viewed as occurring at step two.

An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1520(c). The showing required to meet this threshold has been described by the Tenth Circuit as "de minimis." *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004); *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997). In an oft-cited concurring opinion, Justice O'Connor explained the purpose of a low threshold at this early point of the sequential evaluation: "[S]tep two may not be used to disqualify those who meet the statutory definition of disability. . . . Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking [subsequent analytical steps in the sequential evaluation process]." *See Bowen v. Yuckert*, 482 U.S. 137, 157 (1987) (O'Connor, J., concurring). The Commissioner's interpretation of SSA regulations reflects the same point:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

SSR 85-28, 1985 WL 56856, at *4.

In an unpublished opinion, the Tenth Circuit has held that a claimant who alleges an IQ score of 70 has alleged a severe impairment. *See Callins v. Apfel*, No. 98-6415, 2000 WL 6193, at *3 (10th Cir. Jan. 6, 2000) (citing *Cockerham v. Sullivan*, 895 F.2d 492, 496 (8th Cir. 1990) (holding that a claimant who alleges an IQ score of 70 through

8

79 alleges severe impairment)).[4] The SSA's reliance in Listing 12.05 on IQ scores of 70 and below suggests that the SSA considers a valid score in that qualifying range as per se evidence of a severe impairment.[5] Likewise, the plain language of Listing 12.05(C) suggests that the SSA considers a valid IQ score of 70 as evidence of a severe impairment. Specifically, to meet 12.05(C), a claimant must have an IQ score of 60 through 70 and "a physical or *other* mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05(C) (emphasis added). As noted, the SSA has equated "additional and significant work-related limitation of function" with severe impairments. *See id.* § 12.00(A). Thus, Listing 12.05(C)'s reference to an "other" severe mental impairment in addition to a

---

[4] In a separate case, the Tenth Circuit faced a similar argument that an ALJ had erred by not discussing Listing 12.05(C) despite the claimant having received an IQ score within the qualifying range; however, the court ultimately did not directly address the issue. *See Wall v. Astrue*, 561 F.3d 1048 (10th Cir. 2009). In *Wall*, although the claimant had received an IQ score of 67, the ALJ did not find a severe cognitive impairment and did not discuss Listing 12.05(C). *See id.* at 1070, 1072-74 (Holloway, J., dissenting). Whether the ALJ had discussed the qualifying IQ score, or its validity, in his decision is not apparent from the Tenth Circuit's opinion. *See id.* at 1061. The *Wall* court held that the claimant had not properly raised intellectual disability/mental retardation and, therefore, the ALJ did not err by not discussing Listing 12.05(C). *See id.* at 1061-62. The opinion implies that the circumstances alleged by the claimant would present a step-two, not a step-three, error, but does so in the context of explaining the impact of claimant's failure to allege a severe cognitive impairment. *See id.* at 1061 & n.21.

[5] Although, as previously noted, the SSA's definition was developed from multiple medical definitions, each of the medical definitions agrees that mental retardation is diagnosed based on "significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below." *See* Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. at 20,022.

qualifying IQ score indicates that such an IQ score itself establishes a severe mental impairment. *See id.* § 12.05(C).

Plaintiff alleged an IQ score of 70, which was supported with indicia of validity in Dr. Danaher's comments. *See* R. 396, 397; 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(D)(6)(a), (c) (requiring intelligence test results to include commentary on score validity and accepting lowest valid score for Listing 12.05 purposes). The ALJ did not address this score or its validity in his decision. *See* R. 11-19; *see also Lax v. Astrue*, 489 F.3d 1080, 1081 (10th Cir. 2007) (holding "that factual determinations on the validity of an IQ score [are] within the province of an ALJ and will be upheld when supported by substantial evidence"). Based on the foregoing analysis, the Court finds that the ALJ erred as a matter of law at step two in failing to expressly acknowledge Plaintiff's IQ score of 70 and determine whether the score was valid and, therefore, established a severe cognitive impairment. *See Callins*, 2000 WL 6193, at *3; *Lax*, 489 F.3d at 1081.

Without specific findings by the ALJ on this evidence, the Court cannot assess whether the ALJ's subsequent conclusions are adequately supported by substantial evidence or whether the ALJ applied the correct legal standards in reaching his conclusions. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Accordingly, the Commissioner's decision is REVERSED and REMANDED for additional proceedings consistent with this opinion.

Because Plaintiff's additional claims of error may be addressed through the case's treatment on remand, the Court declines to address these claims. *See, e.g.*, *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). Nevertheless, the Court notes without

deciding that Plaintiff appears to have presented some evidence toward each of the medical criteria specified in Listing 12.05(C). It is the Commissioner's responsibility, however, to weigh such evidence in the first instance. *See* 42 U.S.C. § 405(b)(1). On remand, assuming the ALJ finds that Plaintiff's IQ score is valid, the ALJ should consider whether Plaintiff's impairment meets or equals Listing 12.05(C).[6] *See Peck v. Barnhart*, 214 F. App'x 730, 735 (10th Cir. 2006) ("[T]he Social Security Act . . . requires that the ALJ state the factual basis for concluding that a seemingly relevant listing does not apply[.]" (citing 42 U.S.C. § 405(b)(1))).

## CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner is REVERSED and REMANDED for additional proceedings consistent with this opinion. Judgment will issue accordingly.

---

[6] The Commissioner contends that consideration of Listing 12.05(C) is precluded because Plaintiff has presented no evidence of deficits in adaptive functioning with onset before age 22 as required to satisfy the diagnostic definition. *See* Def.'s Br. at 8; 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05. The ALJ, however, made no express findings in this regard. *See Peck*, 214 F. App'x at 735-36. Further, the Commissioner's contention that the ALJ's findings otherwise confirm the ALJ's rejection of Listing 12.05(C) is unpersuasive because those findings do not "conclusively preclude [Plaintiff's] qualification under the listings at step three such that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *See id.* at 736 (quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34, 735 (10th Cir. 2005)) (internal quotation marks omitted). For instance, although the ALJ noted that "discrepancies" in Plaintiff's education level diminished her credibility, the ALJ did not entirely discount that evidence—evidence potentially offering support under Listing 12.05's diagnostic description for the onset of the impairment before age 22. *See* R. 17; 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05.

IT IS SO ORDERED this 29th day of May, 2014.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE